**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4: 16 CR 00528 AGF |
| | ) | |
| KERRY ROADES, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS COUNT ONE ON DUE PROCESS GROUNDS**
**AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant Kerry Roades, by and through appointed counsel, Douglas P. Roller, and moves this Court for entry of an Order dismissing Count One of the Indictment in this case on due process grounds. In support thereof, Defendant states as follows.

**INTRODUCTION**

The factual basis for this motion was not discovered until undersigned counsel was appointed to represent Defendant and became familiar with the underlying facts of the case in preparation for filing Objections to the Presentence Report. The issue which has arisen is prior retained counsel's *actual conflict of interest*: representing the client while at the same time seeking employment from the client's adversary, the United States Attorney's Office. Mr. D'Agrosa never advised Mr. Roades, nor the Court, of this conflict until Mr. D'Agrosa announced his employment by the U.S. Attorney's office in a newspaper article on January 31, 2018, eight days prior to sentencing. [1] The next day, Mr. D'Agrosa filed his Motion to Withdraw.[2]

---

[1] A copy of this Newspaper article is attached hereto as Exhibit A.

[2] A Copy of Mr. D'Agrosa's Motion to Withdraw is attached hereto as Exhibit B.

Nor did Mr. D'Agrosa's future employer take any steps to bring the conflict to the attention of Mr. Roades or the Court. Indeed, when confronted with the conflict, the government sought to punish Defendant for exercising his constitutional right to conflict free representation, thereby depriving Mr. Roades of due process, which, at this point, can only be cured by dismissal of Count One, the subject of the plea agreement.

A recitation of undersigned counsel's investigation and the government's response when presented with the issue appears to be the most logical manner by which to present the facts.

## **FACTUAL BACKGROUND**

As part of the process of preparing Objections to the Presentence Investigation Report (PSR) and becoming familiar with the facts of the case, counsel, at the client's suggestion, requested a copy of the sentencing hearing of codefendant Beckman since the cooperating codefendants and the victim had testified under oath. Upon reviewing that transcript, counsel realized neither Blake nor Caleb Laubinger placed Defendant Roades at the house where the victim was kept on the second day (November 22, 2016). (Tr. 36-39; 49). Blake never saw Roades hit the victim (Tr. 35-39) and Caleb initially testified that it was Beckman and Roades that hit the victim (Tr. 108-109), but later changed his testimony and said Todd Beckman hit the victim in the face. (Tr. 149). The victim testified to Defendant engaging in all sorts of conduct that is contradicted by the government's other witnesses and often inconsistent with prior statements by the victim. From the transcript, the victim did not appear to be a very credible witness.

The above-described hearing testimony of Blake and Caleb Laubinger established that Roades' involvement in the case occurred *after* the initial kidnapping and *before* any ransom was demanded. Indeed, when Roades was present, Beckman and the brothers planned to retrieve their losses through sale of the victim's vehicles, not ransom.

After review and analysis of the known facts and consultation with Mr. Roades, Undersigned Counsel questioned whether the facts established that Roades furthered the ends of the conspiracy and concluded that the facts did not support a guilty plea to a 20-year sentence. *See United States v. Predoza*, 750 F.2d 187, 198 (2nd Cir. 1984) (and cases cited therein) and *United States v. Johnson*, 513 F.2d 819, 820 (2nd Cir. 1975) (defendant must have a stake in the outcome). Similarly, Mr. Roades was not present when codefendants elected to demand a ransom rather than recoup the money taken by the victim through the sale of his vehicles and did not use a gun in his peripheral involvement with the victim. Nevertheless, the plea agreement provided for a 6-level enhancement because a ransom was demanded and a 2-level enhancement for use of a weapon resulting in an offense level of 39 after adding 3 levels for injury to victim and deducting 3 levels for acceptance of responsibility.

Given Mr. D'Agrosa's experience and recognized superior skills as a criminal defense attorney, it seemed strange that he had negotiated a plea agreement providing for an offense level of 39 (262-327 months or approximately 21.8 years to 27 years) with the government's recommended cap of 20 years being only 2 years less than the low end of the agreed upon Guidelines.[3]

Knowing that D'Agrosa had been hired by the Department of Justice, Counsel did an internet search and discovered the newspaper article of January 31, 2018 wherein Mr. D'Agrosa announced his employment as an Assistant U.S. Attorney in the Eastern District of Missouri. Counsel learned from his client that the newspaper article was the first time that Mr. Roades and his wife became aware that Mr. D'Agrosa was even considering employment by the U. S.

---

[3] The plea agreement also called for dismissal of Count 2. The provisions for a 20-year cap and dismissal of Count 2 were also included in the codefendant's plea agreements. However, the facts demonstrate Mr. Roades to be less culpable than Beckman and the Laubinger brothers.

Department of Justice. Interestingly, in the newspaper article Mr. D'Agrosa lists the "Roades case" as among the most significant cases he has handled recently as a defense lawyer. Counsel also learned that Objections to the Disclosure PSR were due on January 16, 2018, but Mr. D'Agrosa did not file any objections or a waiver of filing pretrial motions nor a request for an extension of time. Thus, Mr. D'Agrosa not only pursued his interest in employment in the Department of Justice without advising the client, but also appears to have abandoned his client at a critical juncture. In his motion to withdraw from representation of Mr. Roades, filed the day after the newspaper article (February 1, 2018, Doc. # 1163), D'Agrosa stated that an "unavoidable" conflict "exists" because of his employment with the U.S. Attorney's Office.

Undersigned counsel had previously been employed for fifteen years in the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice. During his tenure with the Department, counsel supervised two field offices and was responsible for hiring attorneys for those offices. From this experience, counsel was aware that the process of hiring an attorney in DOJ takes an extended period of time. Counsel than contacted a former colleague who had been the First Assistant in the United States Attorney's Office in Chicago for at least two decades. He concurred that the process of hiring an attorney, particularly someone who had been a defense counsel for many years, would take considerably longer than three months.

Since the plea agreement and Defendant Roades' guilty plea occurred on November 3, 2017 and Mr. D'Agrosa had been hired by the Department less than three months later, it appeared to counsel that Mr. D'Agrosa must have made application for employment prior to November 3, 2017 or at the very minimum, was exploring that possibility prior to November 3, 2017.

Not wanting to pursue the matter publicly and expose Mr. D'Agrosa to adverse publicity prior to verification of the facts, Counsel contacted the U.S. Attorney on or about May 21, 2018,

4

on a confidential basis to learn the pertinent dates that would identify with certainty the scope of Mr. D'Agrosa's conflict of interest. The U.S. Attorney stated that he could not recall the specifics of Mr. D'Agrosa's employment, but he would have AUSA Becker research the matter and advise counsel.

On May 22, 2018, AUSA Becker advised Counsel by email that she would be out of town until May 25, 2018 and would get back to counsel then. When Counsel did not hear from AUSA on May 25, 2018, Counsel sent an email advising AUSA Becker of the need to handle this matter soon after the Memorial Day weekend.[4]

Early the following week, AUSA Becker advised Counsel by telephone that the position filled by Mr. D'Agrosa was not even funded until December 15, 2017 and thus Mr. D'Agrosa couldn't have applied before then. This response left many questions unanswered and did not constitute a specific denial of a conflict of interest. Counsel sent AUSA Becker two emails explaining Defendant's position and requesting that the government provide an affidavit from Mr. D'Agrosa specifying when he applied, when he filled out the background questionnaire and when he first discussed employment with the U.S. Attorney's Office with anyone in the Department of Justice. This affidavit would either be put in my file or in a sealed pleading with the Court to establish undersigned counsel's due diligence on this issue. Counsel also warned he would have to proceed on his own if no agreement was reached.[5]

AUSA Becker thereafter responded telephonically that it would be "too much trouble" to locate all the pertinent documents, so, without acknowledging any wrongdoing or conflict, the government would "allow" Mr. Roades to withdraw his guilty plea.

---

[4] These emails are attached hereto as Exhibits C and D respectively.

[5] These emails are attached hereto as Exhibits E and F.

5

On June 13, 2018, Counsel sent a letter to AUSA Davis outlining counsel's view of the facts and proposing possible sentencing scenarios that would be the basis of a new plea agreement following Defendant's agreed upon withdrawal of his guilty plea.  AUSA Davis responded by email on June 19, 2018, rejecting every proposal suggested in Counsel's June 13, 2018 correspondence.  Additionally, AUSA Davis advised that, "I will leave the current offer open [maintain guilty plea] until you ask the Court for a hearing date to withdraw the plea.  *Once that date is set, the offer will be withdrawn and we can earnestly begin trial prep.*"[6] Thus, Mr. Roads would be in a worse position if he exercised his Sixth Amendment right to effective assistance of counsel by requesting a hearing on a motion to withdraw his guilty plea than if he did not assert his constitutional right.

Feeling that this response was both a "slap in the face" to Counsel, who had tried to quietly resolve the issue to avoid embarrassment to the U.S. Attorney's Office and Mr. D'Agrosa, and patently unfair to Mr. Roades, Counsel requested a meeting with the U.S. Attorney.  This meeting was granted and attended by the prosecutors on the case and their supervisor on June 20, 2018.  Counsel outlined his thoughts and discussed a plea to Count Two with dismissal of Count One as an alternative manner of proceeding.

The next day, USA Jensen advised Counsel that the government's position would remain the same as communicated by AUSA Davis.

By taking a position that effectively "punished" the Defendant for asserting a constitutional right, Defendant submits the government is depriving Defendant of due process, requiring the dismissal of Count One.

---

[6] Counsel's letter and AUSA Davis's responsive email are attached hereto as Exhibits G and H respectively.

6

## **VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS**

Because Mr. D'Agrosa was pursuing a position with the U.S. Attorney at the same time he was negotiating the plea agreement and advising Mr. Roades in regard thereto, a conflict of interest clearly existed.[7]

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *U.S. Constitution, Sixth Amendment*. "This right has been accorded . . . 'because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor,* 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic,* 466 U.S. 648, 658 (1984)). "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Cronic,* 466 U.S. at 656. This guarantee includes representation that is free of any actual conflict of interest with counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *United States v. Bradshaw*, 719 F.2d 907, 911 (7th Cir.1983). *See generally, Glasser v. United States*, 315 U.S. 60 (1942).

In *Strickland v. Washington,* 466 U.S. 668, 692 (1984) the Court described a "certain [category of] Sixth Amendment contexts . . . [in which] prejudice is presumed." Falling into this category, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.* "So are various kinds of state interference with counsel's assistance." *Id.* (citing *Cronic,* 466 U.S. at 659 & n.25 (in turn citing *Geders v. United States,* 425 U.S. 80 (1976); *Herring v. New York,* 422 U.S. 853 (1975); *Brooks v. Tennessee,* 406 U.S. 605, 612-13 (1972);

---

[7] Unless the government concedes that Mr. D'Agrosa was pursuing employment with the U.S. Attorney's Office while advising Defendant regarding the plea agreement, an evidentiary hearing may be necessary to conclusively establish the timing of Mr. D'Agrosa's pursuit of a position in the U.S. Attorney's Office.

*Hamilton v. Alabama,* 368 U.S. 52, 55 (1961); *White v. Maryland,* 373 U.S. 59, 60 (1963) (per curiam); *Ferguson v. Georgia,* 365 U.S. 570 (1961); *Williams v. Kaiser,* 323 U.S. 471, 475-76 (1945))). "Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* (citing *Cronic,* 466 U.S. at 658).

Effective representation is lacking if counsel, unknown to the accused and without his knowledgeable consent, is in a duplicitous position where his full talents as a vigorous advocate having the single aim of acquittal by all means fair and honorable are hobbled or fettered or restrained by commitments to others. *Porter v. United States*, 298 F.2d 461, 463 (5th Cir. 1962). An "actual" conflict of interest includes a situation wherein "the defense attorney was required to ***make a choice advancing his own interests to the detriment of his client's interests***," *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988) (citing *United States v. Marrera*, 768 F.2d 201, 207 (7th Cir.1985), *cert. denied*, 475 U.S. 1020 (1986)) [emphasis added], and "which, by its nature, is so threatening [as] to justify a presumption that the adequacy of representation was affected." *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984).

The Missouri Rules of Professional Conduct also recognize that a conflict of interest is created when there is a risk that an attorney's representation of a client may be materially affected by personal interests of the lawyer. Rule 1.7(a)(2).[8]

---

[8] (a) Except as provided in Rule 4-1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be ***materially limited*** by the lawyer's responsibilities to another client, a former client, or a third person or ***by a personal interest of the lawyer***. [emphasis added].

8

Examples of the "personal interest" type of actual conflict include a situation where defendant's attorney was disqualified from the practice of law, *Solina v. United States*, 709 F.2d 160 168 (2nd Cir. 1983) and an attorney implicated in the same crime as defendant, *United States v. Cancilla*, 725 F.2nd 867, 870 (2nd Cir. 1984).

In *McKenna v. Ellis*, 280 F.2d 592, 600-601 (5th Cir. 1960)[9], the court was presented with a situation which, in all material respects, is identical to that presented herein:

> At the very time of their appointment as McKenna's counsel each of the young lawyers had on file with the Dallas County District Attorney's Office a request for employment. Several months later both were employed by the Dallas District Attorney. At the time of the hearing below one was still in the employ of the District Attorney's Office. The other, now an office attorney for an insurance company, testified that in October 1956, he and his co-counsel "were sort of practicing on our own when we were waiting for an opening in the District Attorney's Office". We feel certain that these young men were well intentioned. But their inexperience and the conflict of interest created by their filing an application for employment in the District Attorney's Office prevented their defending McKenna with the vigor and the undivided dedication to their client's cause to which any accused person is entitled.

A criminal defendant's right to counsel is grounded in both the Sixth Amendment and the Due Process Clause's guarantee of the right to a fair trial. *See, e.g., id.; Evitts v. Lucey,* 469 U.S. 387, 394 (1985) ("[T]he Sixth Amendment right to counsel [is] 'so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment." (quoting *Gideon v. Wainwright,* 372 U.S. 335, 340 (1963))); *Powell v. Alabama,* 287 U.S. 45, 50-53 (1932) (holding, prior to the incorporation of the Counsel Clause, that the trial court's appointment of counsel in a manner that precluded counsel from providing "effective and substantial aid" violated the defendants due process rights).

---

[9] *McKenna v. Ellis* was cited with approval in *McQueen v. Swensen*, 498 F.2d 207, 215 (8th Cir. 1974).

In the present case, the violation of Defendant's due process rights is even more egregious than that occasioned by an actual conflict alone. The government had to have known of the conflict because it was both prosecuting the Defendant and knew that D'Agrosa was seeking employment with the U.S. Attorney's Office. In that situation, it was incumbent on the government prosecutors to make inquiry of defense counsel or bring to the Court's attention the possibility of conflict if defense counsel did not do so. Instead, the government remained silent and allowed this Court to accept a plea of guilty from a defendant whose attorney was operating under such a conflict as to be violative of Defendant's Sixth Amendment right to effective counsel and his Fifth Amendment right to due process of law.

More egregious than the government's failure to act to advise the Court of the conflict is the government's overt and intentional effort to punish the Defendant for exercising his Sixth Amendment right to effective counsel. After realizing that Defendant's Sixth Amendment rights had been violated, the government agreed that Mr. Roades could withdraw his guilty plea. However, as noted above, ***if Defendant gave notice of a motion to withdraw his guilty plea, all deals were off and the government would prepare for trial.*** Thus, the government is punishing the Defendant by taking away the one benefit accorded him in the plea agreement—the government's recommendation that Mr. Roads' sentence not exceed twenty years, if he exercised his constitutional right to receive conflict free advice before pleading guilty.

The intractability of the government's position reflects a vindictiveness which violates Defendant's due process rights. The Due Process Clause protects defendants from vindictive treatment based on the exercise of a constitutional or statutory right. "Vindictiveness in this context means the desire to punish a person for exercising his rights." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).

"[A] superseding indictment supports a presumption of vindictiveness when the additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign was involved, and most importantly, when the decision to file increased charges directly followed the assertion of a procedural right." *United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993) (citing *Adamson v. Ricketts*, 865 F.2d 1011, 1018 (9th Cir. 1983 (*en banc*)). "It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual vindictiveness sufficient to establish a due process violation, or if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir 1997) (internal citations omitted).

Thus, in *Blackledge* v. *Perry*, 417 U. S. 21 (1974), North Carolina indicted and convicted Jimmy Seth Perry on a misdemeanor assault charge. When Perry exercised his right under a North Carolina statute to a *de novo* trial in a higher court, the State reindicted him, but this time the State charged a felony, which carried a heavier penalty, for the same conduct. Perry pleaded guilty. He then sought habeas relief claiming the reindictment amounted to an unconstitutional vindictive prosecution. In allowing Perry's claim, the Court noted, "'the right' Perry 'asserts and that we today accept is the right not to be hauled into court at all upon the felony charge' since '[t]he very initiation of the proceedings' against Perry 'operated to deprive him of "due process of law."'" *Id.*, at 30-31.

A year and a half later, in *Menna* v. *New York*, 423 U. S. 61 (1975) (*per curiam*), the Supreme Court repeated what it had said and held in *Blackledge*. After Menna served a 30-day jail term for refusing to testify before the grand jury on November 7, 1968, the State of New York charged him once again for (what Menna argued was) the same crime. Menna pleaded guilty, but subsequently appealed arguing that the new charge violated the Double Jeopardy Clause of the

11

Fifth Amendment. The lower courts held that Menna's constitutional claim had been "waived" by his guilty plea.

The Supreme Court reversed. Citing *Blackledge*, *supra*, at 30, the Court held that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Menna*, 423 U. S., at 63 n. 2. Menna's claim amounted to a claim that "the State may not convict" him "no matter how validly his factual guilt is established." *Ibid*. Menna's "guilty plea, therefore, [did] not bar the claim." *Ibid*.

The holdings in *Blackledge* and *Menna* were recently reaffirmed by the Supreme Court in *Class v. United States*, ___ U.S. ___, No. 16-424, February 21, 2018, pp 7-8.

Finally, a situation legally indistinguishable from the present case was resolved in favor of the defendant in *United States v. Shaw*, 655 F.2d 168, 171 (9th Cir. 1981) as follows:

> In this case, the government freely admits that it moved to vacate Shaw's guilty plea in retaliation for Shaw's exercise of his right under the Federal Rules of Criminal Procedure to file a Motion in Arrest of Judgment after pleading guilty. The effect of the vacation of Shaw's guilty plea was to "up the ante" against him by depriving him of the bargained-for right to plead guilty to a single charge and have the remaining charges dismissed, and forcing him to go to trial on all four counts of the indictment. *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098 2102, 40 L.Ed.2d 628 (1974). ***Thus, a prima facie case of vindictiveness has been shown.*** [emphasis added]

Similarly, in the present case, the government is clearly violating Defendant's right to due process of law by pursuing a vindictive course of prosecuting Mr. Roades without the benefit of a plea agreement which "capped" the government's recommendation on Count One and dismissed Count Two solely because of Defendant's assertion of his Sixth Amendment right to receive effective conflict free assistance of counsel. Under these circumstances, Count One should clearly be dismissed.

Perhaps the most troubling aspect about this case and a factor that Defendant submits the Court should consider is that the government is attempting to force Defendant to forgo pursuit of his constitutional rights in order to protect and cover up misconduct by one who is now part of the U.S. Attorney's Office. If Mr. Roades were simply to "fold" under the pressure and do nothing to disturb the existing plea agreement, the constitutional deprivation would not be known. The government underestimated the resolve of Mr. Roades and his counsel and ignored Counsel's warning.

## **CONCLUSION**

The facts and law are clear and the violation of Defendant's Sixth Amendment right to effective assistance of counsel and his Fifth Amendment due process rights is unmistakable. The government has created a situation whereby at least Count One, if not the whole Indictment against Mr. Roades, must be dismissed.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that his Motion to Dismiss Count One on Due Process Grounds be granted.

Respectfully submitted,

/s/ Douglas P. Roller
Douglas P. Roller MO50262
Roller Law Office, LLC
325 N. Kirkwood Road – Suite G5
Kirkwood, Missouri, 63122
(314) 368-6368
d.roller@rollerlawofficellc.com

***Attorney for Defendant Kerry Roades***

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 1st day of July 2018, the foregoing was filed electronically with the Clerk of Court and was served by operation of the Courts electronic filing system on counsel of record.

                                                /s/ Douglas P. Roller