**ROLLER LAW OFFICE LLC**
325 N. Kirkwood Road – Suite G5
Kirkwood, Missouri 63122
(314) 368.6368
d.roller@rollerlawofficellc.com

June 13, 2018

**VIA EMAIL**

John T. Davis
Assistant United States Attorney
111 South 10th Street – Room 20.333
S. Louis, Missouri 63102

***Re: United States v. Roades***

Dear John:

This letter presents a proposal to dispose of this case quickly and without a trial. First, please allow me to provide my assessment of the evidence as it currently exists against Kerry. I have reviewed most of the discovery in the case and the testimony of Blake and Caleb Laubinger and Ellis Athanis, III at Beckham's sentencing hearing.[1] You will recall that Blake did not testify that Roades did anything to the victim on November 21. Blake doesn't recall even seeing Kerry there the second day, November 22. (Tr. 36-39). Caleb only answered affirmatively to the question, did you see Roades ***and*** Beckman "physically strike Ellis several times"? (Tr. 108-109). Caleb further testified that Beckman did not have anyone with him on the second day. Later in his testimony, Caleb modified his prior statement by stating that ***either*** Kerry or Beckman hit Ellis on the first day. (Tr. 148-149). Ellis is all over the place, contradicting both Caleb and Blake as well as Kerry's proffer and his own prior statements. From reading the transcript it certainly appears that Ellis is not the best witness in the world. Additionally, now that Beckham has been sentenced, he is available as a witness.

The most likely acts the government could prove beyond a reasonable doubt against Kerry are the following: 1) he may have struck Ellis on the first day; 2) he helped relocate one of Ellis's cars, and; 3) possibly provided power of attorney to Blake. Kerry would/could testify that he did not do 1 and 3. My understanding of the evidence is that no physical or scientific evidence links Kerry to having tased Ellis, pistol whipping him or dry firing a gun against Ellis' head. Caleb, Blake, Beckham and Kerry would all testify that Kerry did not participate in any fashion in demanding, negotiating or obtaining the ransom payment or was even present when ransom demands were made.

[1] Neither you nor Paul had the benefit of this testimony when entering into the plea agreement.

Exhibit G

I have not done extensive research on the issue, but it appears that at trial, the government would have to prove that Kerry "associated" himself with the venture, participated in it as something that he wished to bring about or sought by his actions to make it succeed. *United States v. Predoza*, 750 F.2d 187, 198 (2nd Cir. 1984) (and cases cited therein) and *United States v. Johnson*, 513 F.2d 819, 820 (2nd Cir. 1975) (defendant must have a stake in the outcome). Kerry had nothing to gain from this misadventure, had nothing to do with the actual kidnapping and transportation, only assisted in retrieving a car, and possibly have struck the victim as part of punishment for stealing Blake's money and dope. Your only witness to implicate Kerry in any manner with the kidnapping is Ellis. In addition to telling several different stories, Ellis will be contradicted by Blake and Caleb, both of whom the government has vouched for by calling them as witnesses at Beckham's sentencing

Most of the above-described facts and testimony were unknown at the time Kerry entered into the plea agreement. Thus, the factual melieu is much different than when Kerry entered his plea. Additionally, Kerry was not involved in any narcotics activity with any of the codefendants or the victim. No evidence exists that Kerry even knew about the kidnapping before it occurred. Kerry's association with Beckham was solely business in connection with the Beckham fitness studios.

Finally, Kerry is simply "different" than his codefendants as exemplified by a sheaf of letters I can provide to you, at least a dozen Certificates of Achievement while incarcerated, a difficult childhood and substantial health issues. None of this information was available to you during plea negotiations.

There are a couple ways to take into account the above-described information and come up with an appropriate sentence. First, Kerry could be charged with aiding and abetting demanding a ransom under Section 1202 on the theory that he supposedly provided a power of attorney to Beckham. Guideline §2A4.2 would apply with a base offense level of 23. We would waive acceptance of responsibility, resulting in a Guideline range of 46-57 months – just slightly lower than the brothers' sentences who performed actual kidnapping.

Secondly, he could plead guilty to the kidnapping charge with an agreed upon sentence pursuant to Rule 11(c)(1)(C). This can be accomplished in two ways. The first is to just agree on an appropriate sentence. The second is to apply the Aggravated Assault Guideline based on Kerry striking the victim. Although technically only applicable to assault on federal property or maritime jurisdiction, the Guideline could still be used to calculate an appropriate sentence under Rule 11(c)(1)(C). Guideline §2A2.2, Aggravated Assault, has a base offense level of 14. 2 additional levels would be applied for more than minimal planning; 4 levels are added for serious injury; 4 more levels for use of a weapon; 2 levels for demand of money. This results in a ***level 26, with a sentencing range of 63 to 78 months***. I believe this adequately represents Kerry's criminal activity without using the kidnapping Guideline, which is not appropriate in Kerry's case.

Kerry could withdraw his current plea, and then plead to a new plea agreement. This could be done in one hearing. I certainly am not anxious to try this case with the risk of astronomical

Guidelines if convicted, even though I would have something to work with from a defense perspective. On the other hand, I can't advise Kerry to replead to 20 years.

Hopefully, we can reach an accommodation on this case in the near future. Please let me know your position at your earliest convenience. Thank you.

Very truly yours,

Douglas P. Roller