UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CR 00528 AGF |
| | ) | |
| KERRY ROADES, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT AND MOTION FOR PROCEEDING TO DETERMINE STATUS OF DEFENDANT'S GUILTY PLEA

The United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Stephen Casey, Assistant United States Attorney for said District, responds to Defendant Kerry Roades' ("Roades") Motion To Dismiss Count One ("Motion") [Doc. #311] as follows:

First, having previously entered a guilty plea to Count One of the indictment, Roades' Motion now seeks dismissal alleging his due process rights were violated. The Motion should be denied because: (1) there is no conflict of interest with respect to AUSA Paul D'Agrosa's previous representation of Roades and subsequent employment as an Assistant U.S. Attorney; (2) regardless, Roades has not shown any adverse effect from AUSA D'Agrosa's prior representation of him or any prejudice whatsoever; and (3) the Government's proposed course of action and plea offer shows fair, consistent treatment of Defendant Roades and is not violative of his Due Process rights, let alone vindictive or outrageous.

Second, Roades' Motion misconstrues the Government's position in three important ways. First, the Government was certainly willing to remedy Roades' concerns by allowing him to withdraw his previously entered guilty plea and effectively erase AUSA D'Agrosa's representation. Second, despite confusion between the parties, in the event Roades decided to withdraw his guilty plea, the Government's original plea offer remained, and remains, available for Roades to reaccept. Finally, despite Roades' unfounded allegations to the contrary, the Government has consistently insisted that all of these issues would need to be stated on the record before the Court. The Government had no intent, and took no actions, whatsoever to "cover up" anything from the Court.

Third, the Government respectfully requests this Court schedule a proceeding at which Roades can either withdraw his previous guilty plea and the parties can schedule a trial date, or make a record that he has decided to persist in his guilty plea and proceed to sentencing. Such a proceeding would also benefit the Court's docket, in that it would allow for scheduling matters with all parties present. Should Roades decide to withdraw his plea and consider his options with the advice of conflict-free counsel, the Government's plea offer will remain available for reasonable time (but not indefinitely) pending trial.

## I.   FACTS

On December 1, 2016, a Criminal Complaint was issued against Roades and other co-defendants charging them with kidnapping, in violation of 18 U.S.C. § 1201. [Doc. #1]. On December 12, 2016, attorney Paul D'Agrosa, then in private practice, entered his appearance on behalf of Defendant Roades, replacing Roades' previous counsel. [Doc. #16]

On December 14, 2016, the grand jury returned an indictment against Roades and four other defendants, charging them with Conspiracy to Kidnap in violation of 18 U.S.C. § 1201

(Count One) and with Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Two). [Doc. #21].

Post indictment, Mr. D'Agrosa engaged the Government, through AUSA John Davis, in plea negotiations. Acting U.S. Attorney Carrie Costantin authorized AUSA Davis to offer to defendants Todd Beckman, Blake and Caleb Laubinger, and Roades the same plea offer; specifically, in exchange for a guilty plea to Count One of the indictment, the Government would: (1) recommend a sentence of no more than 240 months (20 years) imprisonment; (2) dismiss Count Two (which carried a mandatory sentence of imprisonment of 60 months to be served consecutive to the sentence imposed on Count One); and (3) allow each defendant to argue for a sentence below the applicable guideline range.

In the interim, Jeffrey B. Jensen was nominated on July 14, 2017 to serve as U.S. Attorney for the Eastern District of Missouri. Jensen was confirmed by the United States Senate on October 4, 2017, and took the oath of office on October 6, 2017. After U.S. Attorney Jensen's arrival, the plea offers conveyed to Roades, Beckman, and the Laubingers remained unchanged.

On November 1, 2017, Caleb Laubinger accepted the Government's offer and pled guilty. [Doc. #176]. On November 2, 2017, Todd Beckman did the same. [Doc. #180]. The next day, both Blake Laubinger and Roades followed suit. [Doc. #184, #187]. The Guilty Plea Agreements for the Laubingers, Beckman, and Roades each reflect the Government's proposed plea terms; namely, guilty pleas to Count One of the indictment in exchange for a recommended cap of 240 months, dismissal of Count Two, and the ability by each defendant to argue for a below guideline sentence. [Doc. #177. #181, #185, #188].

Specifically, in his Guilty Plea Agreement, Roades admitted to aiding Beckman's

marijuana trafficking. Roades further admitted he assisted in the kidnapping of Athanas and was present during Athanas' captivity. Roades did not admit that he struck Athanas while restrained or was present when Beckman "dry fired" a gun into Athanas' head. During the change of plea hearing, the parties noted that analysis of cellular phones seized from the defendants at the time of their arrests show communication between the Laubingers, Beckman, and Roades concerning the events detailed herein. The parties jointly estimated the total offense level was 39.[1] [Doc. #185]. During his plea colloquy before Judge Webber, Defendant Roades stated he was satisfied with the representation of his attorney, D'Agrosa. Sentencing was set for February 9, 2018, with objections to the presentence report due by January 26, 2018. [Doc. #184].

On December 21, 2017, the U.S. Attorney's Office for the Eastern District of Missouri ("USAO") received notice that it received funding for two new Assistant United States Attorneys to be assigned to the criminal division. On January 3, 2018, the USAO publically announced the two openings. D'Agrosa applied for one of the positions.[2] Thereafter, USA Jensen offered, and D'Agrosa accepted, one of the positions. [Def. Ex. A]. USA Jensen announced the hiring to the USAO on January 28, 2018.

A few days later, on February 1, 2018, D'Agrosa filed a motion to withdraw as Roades' counsel. [Doc. #236]. In his motion, D'Agrosa apprised the Court that he had just accepted an offer of employment with the U.S. Attorney's Office. [Doc. #236, ¶ 3]. D'Agrosa also stated that Roades had been notified of the conflict and the need for Mr. D'Agrosa to withdraw from the representation. [Doc. #236, ¶ 5]. Finally, D'Agrosa stated that Roades would "require additional

---

[1] The Presentence Investigation Report calculates Roades' total offense level as 40.
[2] Hiring decisions are ultimately made by the U.S. Attorney. Applications are not circulated to the office at large. Neither AUSA Davis nor the undersigned was informed or otherwise aware that D'Agrosa applied for, was being considered for, or was offered a position until his hiring was announced to the USAO at large.

time to retain new counsel and prepare for sentencing, including the filing of any objections to the presentence report and any sentencing memoranda." [Doc. #236, ¶ 6]. D'Agrosa's motion was granted by this Court the next day (February 2, 2018), and the Court stayed the sentencing date pending the entry of new counsel. [Doc. #241].[3]

On March 7, 2018, present counsel, attorney Doug Roller, was appointed to represent Roades. [Doc. #278]. The same day, the Court set sentencing for March 20, 2018. [Doc. #280]. However, sentencing was continued four times at the request of Roller and is currently scheduled for July 13, 2018. [Doc. #284, #295, #301, #309]. Concurrent with the continuances, the Court extended the deadline to file objections to the presentence report ultimately to June 1, 2018. [Doc. #284, #295, #301, #309].[4]

In May 2018, Mr. Roller first approached USA Jensen regarding potential issues surrounding AUSA D'Agrosa's previous representation of Roades and subsequent employment in the USAO. USA Jensen discussed the matter with Mr. Roller and referred him to AUSA Tiffany Becker in her capacity as the USAO's professional responsibility officer. In short, the position communicated to Mr. Roller by AUSA Becker and USA Jensen was that there appeared to be no issue with respect to AUSA D'Agrosa's representation of Roades, especially since the USAO had formally recused AUSA D'Agrosa from the matter.

Mr. Roller requested further information related to the timing of employment discussions. AUSA Becker informed Mr. Roller that the job for which AUSA D'Agrosa was hired did not become open until December 2017, after Roades' change of plea. Nevertheless, Mr. Roller

---

[3] D'Agrosa formally began his employment as an Assistant U.S. Attorney on April 1, 2018.
[4] The Court did not explicitly extend the deadline to file objections in its June 4 Order. The Government does not oppose an extension to the extent Roades needs additional time to file objections.

inquired whether Roades could be extended the opportunity to withdraw his plea if he so chose. Without admitting there was any justification for such an action, in order to assuage Mr. Roller's concerns, the Government informed Mr. Roller that the Government would agree to allow Roades to withdraw his guilty plea and proceed anew with Mr. Roller. Alternatively, if Roades so desired, he could proceed to sentencing. However, in that scenario, the Government would insist that the Court be informed and that a record be made that: (1) Roades alleged a potential conflict of interest with respect to his prior counsel; (2) the Government had agreed to allow Roades to withdraw his guilty plea if he so desired; and (3) Roades declined to do so and desired to proceed to sentencing.

Not specifically discussed were the terms of any subsequent guilty plea offer if Roades decided to withdraw his previous guilty plea. Both parties made faulty assumptions as a result: the Government assumed Mr. Roller knew that the plea offer would be the same as that previously accepted by Roades (hence the discussion regarding Roades preceding to sentencing); whereas Mr. Roller appears to have assumed the Government would be open to renegotiation of the guilty plea terms.[5]

In that vein, on June 13, 2018, Mr. Roller sent a letter to AUSA Davis that, among other things, contained potential plea proposals. [Doc. #311, Def. Ex. G]. AUSA Davis replied to Mr. Roller a few days later rejecting Mr. Roller's proposals and stating that the Government's plea offer (the same to which Roades had previously pled guilty) remained unchanged. Because of AUSA Davis' assumption that either Roades or Mr. Roller would not wish to withdraw his guilty plea only to re-plead to the same thing, AUSA Davis also assumed that if Roades intended to

---

[5]  As explained below, this confusion would be resolved later.

withdraw his plea, then he intended to go to trial. Accordingly, AUSA Davis stated that the Government's offer would remain open until Roades set a hearing to withdraw his plea, thereby inadvertently adding to the confusion. [Doc. #311, Def. Ex. H].

Mr. Roller then requested a meeting with USA Jensen to discuss the matter. USA Jensen agreed to meet with Mr. Roller, and a meeting took place. Also in attendance at the meeting were OCDETF Chief James Delworth, AUSA Davis, and the undersigned. In the meeting, Mr. Roller discussed his view of AUSA D'Agrosa's prior representation of Roades and subsequent employment as an AUSA, his opinion of the Government's case, and guilty plea counteroffers. At the conclusion of the meeting, USA Jensen took the matter under consideration and indicated he would respond promptly.

In the following days, USA Jensen called Mr. Roller and reiterated that Roades was free to withdraw his plea. Dispelling any confusion, USA Jensen conveyed to Mr. Roller that, in the event Roades withdrew his plea, the Government's plea offer would remain open, but unchanged from the terms previously offered and accepted by Roades (and Beckman, and the Laubingers). USA Jensen told Mr. Roller that should Roades decide to forego trial and proceed to sentencing, the Government would require that a record be made regarding all of the above before the Court.

After Mr. Roller's conversation with USA Jensen, AUSA Davis had his own follow-up conversation with Mr. Roller. In the conversation, AUSA Davis clarified his response to Mr. Roller's letter. AUSA Davis reiterated the terms of the Government's plea offer, stated the offer would remain open in the event Roades withdrew his plea, and echoed USA Jensen that if Roades decided not to withdraw his plea and proceeded to sentencing, the Government insisted a record regarding the events be made before the Court. Both USA Jensen and AUSA Davis made it clear to Mr. Roller that no other plea offers were forthcoming and no counterproposals would

be accepted. AUSA Davis clearly informed Mr. Roller that to the extent the pending plea offer was unacceptable to Roades, the Government was ready to proceed to trial.

Defendant Roades thereafter filed the instant Motion seeking to dismiss Count One.[6]

## II.   ARGUMENT

Roades essentially asserts two basis for dismissal: first, that the Sixth Amendment requires dismissal because AUSA D'Agrosa operated under a conflict of interest with Roades by pursuing a position with the USAO while representing Roades; and, second, that Due Process requires dismissal because the Government engaged in vindictive behavior directed toward Roades.

Roades' arguments fail because: (1) neither D'Agrosa' application nor subsequent employment by the USAO constitutes an actual conflict of interest; (2) assuming *arguendo* there was an actual conflict of interest, which there was not, Roades has failed to show any adverse effect the conflict may have had on D'Agrosa's representation of him or any prejudice whatsoever; and (3) Roades has failed to demonstrate any misconduct by the Government – much less outrageous or vindictive conduct – sufficient to establish a Due Process violation. As stated in his motion to withdraw, AUSA D'Agrosa promptly informed Roades of his employment and withdrew from the representation obviating the need for the Government to take any further action. Therefore, this Court should deny Roades' Motion.

Finally, no further inquiry or evidentiary hearing by the Court is needed related to AUSA D'Agrosa's representation of Roades, or the events surrounding his hiring. However, a proceeding to provide clarity regarding Roades preferred course of action would be useful in

---

[6] The Motion only moves to dismiss Count One and not Count Two - presumably because Roades only pled guilty to Count One. Regardless of the reasons, neither of the Counts should be dismissed.

order to clarify the procedural posture of the case, and allow the parties to either prepare for trial or sentencing.

A.  **Dismissal is Not Warranted Pursuant to the Sixth Amendment**

As a preliminary matter, there is a question as to the appropriate standard for analysis of Roades' Sixth Amendment claims.[7] Claims of effective assistance of counsel are typically examined under the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 685 (1984).[8] However, *Strickland* recognized that a limited presumption of prejudice may arise in cases where a lawyer's performance is adversely affected by a conflict of interest. *Id.* at 692. Quoting from its decision in *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980), the *Strickland* Court noted that prejudice is "presumed only if the defendant demonstrates that counsel 'actually represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.*; *see also Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014).

Subsequently, in *Mickens v. Taylor*, 535 U.S. 162, 174 (2002), the Supreme Court noted that *Cuyler* had been applied by courts of appeals "unblinkingly," not only to successive representation cases, but in a variety of other cases involving alleged conflicts of interest. The Court made clear, however, that it had never extended the *Cuyler* standard to conflicts other than those arising from joint representation at trial. *Id.* Whether *Cuyler* should be extended to successive representation cases "remains, as far as the jurisprudence of this Court is concerned, an open question." *Id.* at 176.

---

[7]  For his part, Roades does not appear to select either standard as appropriate here.

[8]  Under *Strickland*, a defendant must establish both deficient performance and resulting prejudice in order to succeed on a claim of ineffective assistance of counsel. *Id.* at 689. To show prejudice, a defendant must prove that "counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." *Id.*

Most recently, the Eighth Circuit has "expressly refrained from deciding whether the lowered burden in establishing prejudice applies to actual conflicts of interest which did not arise out of multiple representation." *Morelos v. United States*, 709 F.3d 1246, 1251–53 (8th Cir. 2013); *see also Wemark v. Iowa,* 322 F.3d 1018, 1021 (8th Cir. 2003) ("We have not yet clarified whether *Cuyler*'s presumed prejudice analysis extends beyond such circumstances to all conflict of interest cases."). Accordingly, the Government will focus on the *Cuyler* standard for its analysis herein. While the Government does not concede that there is an actual conflict or that *Cuyler* is the appropriate standard, the bottom line is that if there was no adverse effect on AUSA D'Agrosa's representation of Roades, which there was not, there was necessarily no prejudice to him either. *See, e.g., Morelos*, 709 F.3d at 1251–53 ("we decline to decide the issue here because we conclude Morelos's [sic] claims would fail under the standards of either *Cuyler* or *Strickland*"); *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010) (concluding the petitioner would lose under either *Cuyler* or *Strickland* and declining to decide the applicability of *Cuyler*); *Covey v. United States*, 377 F.3d 903, 907 (8th Cir. 2004) (same).

      1.   Roades Has Failed to Demonstrate Any Adverse Effect on D'Agrosa's Representation of Him.

Under the *Cuyler* standard, for a presumption of prejudice to apply, Roades must demonstrate that there was an actual conflict of interest that adversely affected D'Agrosa's performance. *Plunk*, 766 F.3d at 764. To make such a showing, the defendant must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Morelos*, 709 F.3d at 1252.

Roades fails to demonstrate any conceivable harm he suffered as a result of AUSA D'Agrosa's representation of him. He does not (1) identify a plausible alternative defense strategy or tactic that D'Agrosa might have pursued on his behalf, (2) show that the alternative strategy was objectively reasonable under the facts, and (3) establish that D'Agrosa's failure to pursue the alternative strategy was linked to the actual conflict.

First, Roades does not identify a plausible alternative defense strategy or tactic that AUSA D'Agrosa might have pursued for Roades that is reasonable under the facts of this case. The reason for this failure is there is no such strategy. Different counsel for the Laubingers, Beckman, and Roades all engaged the Government in plea negotiations, and all received the *same* offer, which led to the four guilty pleas containing the *same* terms. Moreover, despite Roades' change of counsel, and the possibility of Roades' withdrawing his plea, the Government has maintained the *same* plea offer to Roades throughout. As evident by Mr. Roller's rejected June 2018 letter and subsequent failed appeal to USA Jensen, it is clear that the Government's offer has been, and is, firm, and Roades is in no better or worse position now with Mr. Roller than he was with AUSA D'Agrosa.

Next, AUSA D'Agrosa was not hired until well after Roades pled guilty. It is illogical to suggest that the Government somehow gained some advantage over Roades in November 2017 by virtue of hiring his lawyer in January 2018. It is likewise illogical to suggest that Roades experienced any adverse impact in January 2018 while AUSA D'Agrosa sought and received employment at the USAO in light of the inaction in the case at that time. Though sentencing was approaching, this Court stayed both the sentencing and the deadline to file objections to the PSR until new counsel could appear, then continued both the sentencing and extended the objection deadline for months after Mr. Roller entered his appearance.

Recognizing the problem the timeline presents to his argument, Roades asserts, based on nothing more than a conversation with an AUSA from another district and a resuscitation of a personal memory of DOJ hiring practices, that a decision to hire AUSA D'Agrosa must have been set in motion (or even in place) well before January 2018. Bbecause of the Government's consistent treatment of Roades throughout, it is utterly irrelevant whether AUSA D'Agrosa and USA Jensen had an agreement (or even discussions) related to D'Agrosa's employment in the USAO before January 2018. That similarly situated co-defendants represented by different attorneys also received the same treatment further undermines any suggestion that the Government gained an advantage by virtue of any discussion or agreement related to AUSA D'Agrosa's subsequent employment that may have occurred prior to January 2018.

In addition, for Roades to assert, based on unsupported suppositions, that AUSA D'Agrosa would purposely fail to secure a better result for Roades and force him to plead guilty in exchange for the mere hope of obtaining a job that did not exist (and may never exist) is absurd and should be rejected. *See United States v. Bertram*, 209 F. Supp. 3d 243, 260 (D.D.C. 2016) (refusing to assume that a defense attorney would "intentionally underperform in defendant's case in order to win a job at the Department of Justice" without defendant submitting any facts that would lead to that conclusion).

Likewise, for Roades to assert that USA Jensen would induce D'Agrosa with a job that may never exist to get Roades' guilty plea is similarly preposterous – especially where, as here, there is strong evidence of Roades' guilt. *See Garcia v. Bunnell,* 33 F.3d 1193, 1199 (9th Cir. 1994) (rejecting claim of ineffective assistance of counsel and concluding that defense counsel's plan to work for District Attorney's office after defendant's trial did not create an actual conflict of interest, reasoning that "[g]iven the inherently transitory nature of representation in the area of

criminal law, as well as the potentially unlimited reach of the guilt by association logic Garcia would have us apply, we must significantly rely on the integrity of counsel in evaluating such potential conflicts.")

Regardless of Roades' attorney, the presiding U.S. Attorney, or the origin of AUSA D'Agrosa's employment with the USAO, Roades' options have always been the same: accept the Government's proposed plea offer or go to trial. There is simply nothing AUSA D'Agrosa could have plausibly done in a different way to change that. Accordingly, Roades fails to show any adverse effect on Roades as a result of AUSA D'Agrosa's employment with the USAO. *See United States v. Unruh*, 855 F.2d 1363, 1379 (9th Cir. 1987) (affirming the district court's denial of an evidentiary hearing and holding that defense counsel's application for employment as an assistant United States attorney, disclosed to the defendant just before trial, did not adversely to affect defendant).

### 2. Roades Fails to Show There was an Actual Conflict.

Having failed to identify any plausible alternative defense strategy or tactic that could have been pursued by AUSA D'Agrosa, let alone one that was objectively reasonable under the facts, Roades cannot link AUSA D'Agrosa's purported failure to pursue an alternative strategy to his subsequent employment with the USAO, or even any discussions that may have occurred regarding his subsequent employment with the USAO. Accordingly, the Court can stop here and deny Roades' Motion. However, to the extent the Court wants to address the issue, numerous courts have repeatedly determined that the mere act of seeking employment in the office prosecuting a client is not, in itself, an actual conflict of interest. *See United States v. Franklin*, 213 F. Supp. 2d 478, 485 (E.D. Pa. 2002) ("other district and appellate courts have addressed the question of whether a defense attorney seeking employment or elected office in a prosecutor's

office creates an actual conflict of interest, and all have held that no actual conflict exists in such situations").

For example, in *United States v. Horton*, 845 F.2d 1414, 1419-20 (7th Cir. 1988), defendant claimed that trial counsel's status at the time as a candidate for the position of United States Attorney caused counsel to fail to pursue a vigorous defense. In rejecting that claim, the Seventh Circuit concluded that a remand for a hearing was unnecessary, that there was no evidence of adverse impact, and that candidates for the post of United States Attorney could represent criminal defendants without, as a matter of law, having a conflict of interest. *Id*. at 1419–21. Notably, the court stated that "it is too fanciful" to "indulge the presumption that a defense attorney who is being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interest at heart." *Id*. at 1419.

Citing *Horton*, the district court in *Bertram*, reached the same result in a similar situation. When a member of the defense team was nominated for a position at DOJ, the defendant claimed that the attorney's loyalties were divided as a result of the nomination. Like in *Horton*, the court flatly rejected this claim stating that "[m]erely pointing to [defense counsel's] potential future employment is not sufficient to establish an actual conflict of interest." 209 F. Supp. 3d at 260.

Likewise, in *Turner v. Commonwealth of Virginia*, 528 S.E.2d 112, 113 (2000), appointed defense counsel applied for employment as a prosecutor prior to trial. Counsel did not tell the defendant of the application. Instead, counsel informed his client of the application after trial (where defendant was convicted) when he was notified that he was being considered for the position. Counsel was subsequently offered the position and accepted it. Days later, counsel notified the defendant that he needed new counsel to handle sentencing and other post trial

matters. Citing *Horton* among other cases, the Virginia Supreme Court held that the attorney's pending application for employment did not create a conflict of interest on its face. Nor was there an actual conflict since the attorney did "nothing more than file the application. *Id.* at 115. *See also Draper v. Adams*, 215 F.3d 1325 (6th Cir. 2000) (finding no actual conflict where, during same time period he represented the defendant, defense counsel was campaigning for election as county prosecutor); *Moreland v. Scott,* 175 F.3d 347, 348–349 (5th Cir. 1999) (holding there was no actual conflict under *Cuyler* where defense counsel in a state capital murder trial knew that he would be running for district attorney in the next election); *State v. Scott*, 209 So. 3d 888 (La. App. 3 Cir. Dec. 28, 2016) (rejecting that there was an actual conflict of interest for defense attorney who was campaigning for judge); *People v. Clark*, 857 P.2d 1099, 1127-28 (Cal. 1993) (stating that there was no conflict where counsel was campaigning to be elected district attorney while representing the defendant).

Nor do courts see an actual conflict of interest when counsel actually accepts employment in the prosecutor's office while continuing to represent the defendant. For example, in *Bunnell* the defense attorney announced the morning of trial that he had accepted employment with the same prosecutor's office prosecuting his client. 33 F.3d at 1194-95. The Ninth Circuit rejected the defendant's claims of ineffective assistance of counsel, stating that "[t]he mere fact of [defense counsel's] future employment plans did not create an actual conflict." *Id*. at 1199. The court reasoned that that any potential conflict was further precluded because, as here, defense counsel did not discuss the case with the district attorney's office and there was no other evidence of a conflict. *Id*.

In *Commonwealth v. Agbanyo*, 872 N.E.2d 758 (Mass. App. Ct. 2007), defense counsel informed the defendant on the morning of his trial that she had accepted a position with the

county prosecutor's office. The defendant continued through trial and was convicted. The court there found no conflict, stating that counsel was "never in the position of owing conflicting professional duties to the defendant and to the district attorney's office." *Id.* at 764. The court acknowledged a possible effect of the impending employment; namely, that counsel would pull her punches for fear that her future colleagues with whom she would have to work would be offended if she defended the defendant vigorously. *Id.* Nevertheless, the court concluded that these effects were "too speculative" to warrant relief. *Id. See also Beaver v. Thompson,* 93 F.3d 1186, 1192 (4th Cir. 1996) (merely showing that court-appointed defense attorney also served as a part-time assistant Commonwealth's Attorney in a neighboring county is insufficient to sustain burden of presenting convincing evidence of conflict of interest); *Catala v. State*, 897 A.2d 257, 270 (Md. Ct. Spec. App. 2006) (stating that that defense counsel's upcoming employment with the State's Attorney's Office constituted "a mere theoretical conflict of interest, as opposed to an actual conflict" and that "it would be absurd to believe that it is likely that a licensed Maryland attorney would give less than zealous performance on behalf of his client…merely because he had accepted future employment with the prosecutor's office."); *People v. Doggett*, 625 N.E.2d 923, 927-28 (Ill. App. Ct. 1993) (holding that counsel's upcoming employment in prosecutor's office did not create conflict); *People v. Marshall*, 242 Cal. Rptr. 319, 320-22 (Ct. App. 1987) (rejecting defendant's argument that counsel had labored under a conflict because he had accepted a job with the prosecutor's office before representing the defendant).

   In a habeas review, the Eighth Circuit addressed a factual situation related to a defense attorney's future employment with the opposing prosecutor's office, but expressly refused to address the habeas district court's determination that the future employment constituted an actual conflict of interest. *Atley v. Ault,* 191 F.3d 865, 872, n. 5 (8th Cir. 1999). Instead, the opinion

repeatedly labeled the situation as a *potential* conflict. *See e.g., id.* at 872 ("…we hold that the Iowa Supreme Court's conclusion that the trial court adequately inquired into the *potential* conflict of interest…"); *id.* at 873 ("…the *potential* conflict of interest in the instant case…"); *id.* at 874 ("…*Holloway* requires reversal where the trial court failed to discharge its duty to inquire into a known *potential* conflict…") (emphasis added).

Notably, the Court here proceeded very differently than the trial court in *Atley*. In *Atley*, defense counsel had accepted a job with the prosecutor's office a few days before trial and immediately moved to withdraw. *Id.* at 867. At a pre-trial hearing, defense counsel, the defendant, and the prosecution all argued for withdrawal. *Id.* at 867-68. However there, unlike here, rather than grant the motion or inquire further, the state trial court *denied* the motion "assum[ing] answers to questions that were never asked" and merely "opin[ing] that each side would perform its roles appropriately." *Id.* at 872. Upon habeas review, the Eighth Circuit held that the trial court failed to conduct an adequate inquiry into the matter as required by *Holloway v. Arkansas,* 435 U.S. 475 (1978). Very different than the trial court in *Atley*, this Court immediately granted AUSA D'Agrosa's motion, stayed (and ultimately continued) the sentencing, extended the deadline to file objections to the presentence report, and provided new counsel.

Nor does *Atley* suggest an evidentiary hearing into the circumstances behind AUSA D'Agrosa's hiring is necessary. First, the instant case presents a far different set of facts than that in *Atley* – not the least of which is that this Court granted AUSA D'Agrosa's motion and the Government has agreed to allow Roades to withdraw his plea. Second, clearly motivating the Eighth Circuit's insistence in *Atley* on further inquiry is the trial court's decision to deny the motion to withdraw – despite the protestations of the parties – based on the trial court's

assumptions and irritation with the perceived dilatory tactics of the defendant. Recognizing the unique nature of the facts presented, the opinion takes care to "counsel[] that the nature of the factual inquiry into potential conflicts is case-specific and that in some instances, the court would have the relevant facts without engaging in an intensive inquiry." *Id*. at 872; *see also United States v. Harkrader*, 636 F. Appx 379, 382 (8th Cir. 2016) (court's on-the-record, five question inquiry at sentencing hearing sufficiently addressed defendant's complaints); *United States v. Jones,* 795 F.3d 791, 797 (8th Cir. 2015) (finding that, even when no inquiry was made, the district court "had all the information necessary to make a ruling"); *United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010) (finding no "elaborate inquiry" needed into potential conflict arising from threats of frivolous legal claims made by the defendant against the attorney). In light of all of this Court's actions, there is no need for further inquiry.

Finally, Roades' reliance on *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), *modified*, 289 F.2d 928 (5th Cir. 1961) is misplaced. Despite the cited excerpt, a fuller review of *Ellis* reveals that it does not hold that merely applying for a job with the opposing prosecutor's office is *per se* an actual conflict. Instead, *Ellis* tells the story of a defendant treated unfairly by the system at every turn, aided by the youth and inexperience of his own counsel. *Id*. at 595-96, 599-600. While the two young defense attorneys in the case did have applications on file with the local prosecutor's office, the court includes the applications as one part of a larger panoply of facts that combined to result in the unfair treatment of the defendant by the trial judge and prosecutor. *Id.* at 600. ("In view of their relationship with the District Attorney, it is not surprising that [defense counsel] were willing to accommodate him by agreeing to the short notice of trial and to the advance in the trial date without notice.")

Because of the virtually limitless cases in which a "conflict" may theoretically arise when

a lawyer's self-interest is implicated, there is a very real danger of analyzing these issues not on developed facts but on speculation and conjecture by former clients with an axe to grind. Accordingly, the aforementioned cases share the common underlying presumption that an actual conflict of interest requires a sturdier factual predicate than supposition derived from applications or speculation related to the effects of future employment.

**B.      Dismissal is Not Warranted Pursuant to Due Process**

    1.    The Government has not Engaged in Vindictive Conduct.

Roades alternatively asserts that vindictive conduct by the Government violated his Due Process rights and warrants dismissal of Count One. Specifically, Roades alleges that the Government is punishing him by withdrawing its plea offer in the event Roades withdraws his guilty plea. Motion, p. 10. Once again, the Government is willing to allow Roades to withdraw his previous guilty plea. Roades' claim is moot.

However, to the extent Roades claims that the Government is acting vindictively by insisting that Roades either accept the same plea offer or proceed to trial where he risks more prison time, the Government is not acting vindictively by not offering Roades a third option. It is well settled that Roades is not entitled to any plea offer, let alone a plea offer that he likes. *Weatherford v. Bursey,* 429 U.S. 545, 561, (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); *Nguyen v. United States,* 114 F.3d 699, 704–05 (8th Cir. 1997) ("There is no constitutional right to plea bargain. It is the prosecutor's prerogative to offer a 'package deal' or no deal at all.") (citations omitted); *United States v. Swift*, 2013 WL 6511716, at *2 (E.D. Ark. Dec. 11, 2013) ("It was entirely within the prosecutor's discretion as to whether she wanted to offer a plea bargain after Petitioner rejected the earlier offer."). The mere fact that Roades does not like the Government's offer is

insufficient to warrant a presumption of vindictiveness by the Government. *See United States v. Goodwin,* 457 U.S. 368 (1982).

Accordingly, Roades's unfounded claims of vindictiveness fail.

2.  The Government's conduct was not outrageous

Intertwined with his vindictiveness claim, Roades also asserts that "egregious," or outrageous, conduct by the Government in two respects warrant dismissal of Count One. The first is the Government's purported failure to notify the Court of AUSA D'Agrosa's employment. Motion, p. 10. The second is the Government's purported attempt to "protect and cover up misconduct" by a new colleague. Motion, p. 13. Roades' baseless assertions fail to demonstrate any misconduct on the part of the Government, let alone conduct that shocks the conscience.

"The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993). First, within days of accepting employment with the USAO, AUSA D'Agrosa had notified Roades of the situation and filed his motion to withdraw in this case – effectively mooting any necessary action on the part of the Government directed to the Court. With respect to the time prior to D'Agrosa's employment, as explained above, courts throughout the country have repeatedly concluded that applications alone do not create an actual conflict of interest to report. Failing to report a conflict that does not exist cannot be grounds for dismissal. Moreover, it is reasonable – or at least not outrageous – for the USAO to refrain from clogging already busy court dockets with premature motions for inquiry based on mere applications or speculative conversations. Accordingly, nothing here can plausibly be considered outrageous enough to shock the conscience.

Second, Roades' accusation of a "cover up" by the USAO is remarkable. Time and again Roades was told in no uncertain terms by USA Jensen, AUSA Becker, and AUSA Davis that Roades was free to withdraw his guilty plea. In the event Roades wanted to keep the terms of his plea, both USA Jensen and AUSA Davis insisted that the Court be informed and a record be made. Quite simply, there is no "cover up" and to assert otherwise without evidence is irresponsible.

**C.      An Evidentiary Hearing is Unnecessary, but a Proceeding is Necessary to Determine the Status of Roades' Guilty Plea.**

While Roades does not explicitly request an evidentiary hearing, he does suggest that one may be necessary here. *See* Motion, p. 7, n. 7. Such a hearing is unnecessary. First, as explained above, no job existed prior to, at best, December 2018 and AUSA D'Agrosa sought and obtained employment in the USAO in January 2018 – well after Roades pled guilty. Second, the USAO has already agreed to allow Roades to withdraw his guilty plea. Roades' suggests that AUSA D'Agrosa was applying for employment with the USAO around the time of his guilty plea, this created a *per se* actual conflict of interest, and this precluded AUSA D'Agrosa from successfully pursuing a plausible alternative strategy for Roades. Assuming this allegation is true, which it is decidedly not, Roades' only conceivable remedy is the appointment of new counsel – which Roades already has – not the dismissal of Count One. Further, no evidentiary hearing is necessary to examine the circumstances around Roades' guilty plea as the Government has mooted that by already agreeing to what would be the ultimate end for any such hearing; namely, the withdrawal of the guilty plea. If any proceeding is necessary, it is to discern Roades' decision regarding whether he desires to withdraw his plea.

**III.    CONCLUSION**

AUSA D'Agrosa's employment with the USAO had no adverse effect – and certainly no prejudice – on his representation of Roades and does not justify the extraordinary remedy of dismissal of Count One of the indictment. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (dismissal is especially inappropriate where any ineffective assistance of counsel has had no adverse impact on the criminal proceedings). But, even if there was such a showing, the remedy would be for Roades to proceed with conflict free counsel – which he has. Further, nothing here can remotely be considered vindictive or outrageous Government conduct.

WHEREFORE this Court should deny Roades' Motion and immediately set a proceeding to discern whether Roades' wishes to withdraw his guilty plea.

Dated: July 9, 2018                    Respectfully submitted,

                                       JEFFREY B. JENSEN
                                       United States Attorney

                                        */s/ Stephen Casey*
                                       STEPHEN CASEY, #58879MO
                                       Assistant United States Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

 */s/ Stephen Casey*
STEPHEN CASEY, #58879MO
Assistant United States Attorney