1.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MISSOURI

THOMAS EAGLETON UNITED STATES COURTHOUSE

111 SOUTH 10TH STREET, 9TH FLOOR

ST. LOUIS, MISSOURI 63102


UNITED STATES OF AMERICA,

    Plaintiff.


V.                                  CASE NO. 4:16CR00528-4-AGF


KERRY GLEN ROADES,

    Defendant


## EMERGENCY MOTION FOR SENTENCE REDUCTION

## PURSUANT TO THE FIRST STEP ACT 18 U.S.C. 3582 (C) (1) (A) (i)


Dear Honorable Judge Audrey G. Fleissig,


Comes now the defendant, Kerry Glen Roades, Movant PRO SE, before this honorable Court, respectfully requesting a sentence reduction pursuant to the First Step Act. On December 21, 2018, President Donald John Trump signed into law the First Step Act. As a result, Section 503- FEDERAL PRISONER REENTRY INITIATIVE REAUTHORIZATION; MODIFICATION OF IMPOSED TERM OF IMPRISONMENT was modified and section 231 (G) of the Second Chance Act of 2007 (34 U.S.C. 60541 (g)) is amended. Specifically, section (C) (1) (A) (i), a defendant's ability to request a sentence reduction pursuant to this subsection.


On 8-29-2018, this honorable court sentenced me to a term of 126 months of imprisonment, to be followed by 3 years of supervised release, for the offense of U.S.C. 18;1201 (A); 18:1201 (C) Conspiracy to Commit Kidnapping, as detailed in docket number 4:16CR00528-4 AGF. I am currently serving out my sentence at the FCI Low located in Yazoo City, Mississippi.

The First Step Act as contained in Section 503 Federal Prisoner Reentry Initiative Reauthorization; Modification of Imposed Term of Imprisonment has been modified and amended. Under this change, specifically, subsection (C) (1) (A) (i), now permits a defendant the ability to request a sentence reduction pursuant to this subsection as it pertains to EXTRAORDINARY AND COMPELLING reasons for reducing a sentence. Ever since the passage of the First Step Act, Judges have been advocating 18 U.S.C. 3582 (C) (1) (A) as a critical and valuable new mechanism to reduce problematic prison sentences in any and every case in which the defendant presents "extraordinary and compelling" reasons for the reductions.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

On April 1, 2020 the Bureau of Prisons placed all 122 institutions on Modified Operations. As a result of this, we are confined to our housing areas. No access has been provided since that date to the law library, printer or copier. On April 1, 2020, the Assistant Warden to the FCI Low, Mr. Lee, conducted Town Hall meetings and informed the inmate population that "all courts are closed due to the novel Coronavirus Pandemic". Of course this is incorrect and untrue. Federal inmates, including myself, are provided email through a system known as TRULINCS. As a result of this, we receive regular updates from criminal defense attorneys, law firms, law professors and paralegal document preparation companies that provide information on what is happening in the "free world". As a result of that information given to us daily from these sources, we knew that the message being provided to us from the BOP was disingenuous. However, any attempt to correct this false assertion was met with hostility toward the inmate population.

I requested the standard BP-8 & BP-9 forms required to exhaust my administrative remedies, so that I could request compassionate release and was denied this from my unit counselor, Mr. Johnson. Again, on 5-28-2020 I requested these forms from BOP Counselor Johnson and he told me directly that the "BOP is not accepting any forms pertaining to compassionate release" from inmates. This was told to me in the presence of another inmate, Wesley Todd #60775-298. These actions have denied my due process to seek relief.

The First Step Act provides the criteria when asking for compassionate release. An inmate is to file a BP-9 Administrative Remedy with his Warden, mine is currently Mr. Steven Reiser, and then wait for a response. If a denial or no response is given within a 30 day period, then the inmate may proceed with a Motion to the Court. I have attempted to satisfy this requirement repeatedly.

Before a compassionate release motion can be considered on the merits, the defendant must exhaust administrative remedies. I submit to the Court that I have now attempted to do this since April 1, 2020, but all to no avail. The First Step Act provides that courts can consider compassionate release motions brought by incarcerated defendants only if one of two requirements is met. First, Courts can consider

such motions "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf. 18 U.S.C. 3582 (C) (1) (A). Second, Courts can consider such motions after the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility. The earlier of these two dates controls; as soon as one of these requirements is met, the exhaustion requirement is satisfied. See United States V. Scparta 18-CR-578 (AJN) (S.D.N.Y. Apr 19, 2020).

I would express to the Court that because COVID-19 poses immediate danger to my health, safety and well being, proceeding through the BOP's internal administrative process is both futile and can cause irreparable harm and death. Some courts have excused the failure to comply with the exhaustion requirement in this context for equitable reasons like futility. See United States V. Perez, No. 17-CR-513-3 (AT), 2020 WL 1546422, (S.D.N.Y. April 1, 2020); Haney, 2020 WL *91821988, at *2. See also United States V. Russo, No. 16-CR-441 (LJL). Judge Liman noted that the Supreme Court and Second Circuit have applied equitable exceptions to mandatory claims processing rules like this one, and concluded that the text, history, and purpose of the First Step Act counsel in favor of finding the requirement amenable to such exceptions.

After the April 1, 2020 lockdown of all 122 BOP facilities, which the BOP refers to as Modified Operations, a number of inmates located here at the same facility that I am housed in have become infected and have died as a direct result of COVID-19. Indeed, the Bureau of Prisons website will substantiate the fact that three (3) inmates have died here, two (2) of whom were adjacent to me. One of those inmates was named Emanuel Brewster Jr., he was 50 years of age and found unresponsive in his bunk. EMS was unable to resuscitate him and he was pronounced dead here in the housing unit. See BOP.GOV news article 6-5-2020. Nationally there are 78 dead inmates and two (2) staff members, 1,957 infected inmates and 183 staff members. The Yazoo City USP records 42 infected, 13 staff infected and 1 death. The Medium records 1 inmate infected and 7 staff members. The Low where I am housed reports 16 inmates and 6 staff, with 2 deaths of inmates.

I cannot get any paperwork or answers from staff regarding legal work, access to the law library, copies, printing or even access to administrative remedies paperwork. All of this is non-existent. To make matters much worse, recently United States Attorney General William Barr ordered all BOP facilities nationwide on a lockdown. This was done in reaction to the looting, destruction of property, protests, mayhem, following the death of George Floyd by Minneapolis, MN, police officers. The Attorney General ordered all Special Operations Response Teams to Washington, D.C. & New York. As a result we now remain on permanent lockdown until at least June 30. I cannot socially distance. There is NO PPE for inmates. The staff routinely and flagrantly refuses to wear face-masks, placing their own lives in danger. This COVID-19 outbreak was described by Director Carvajal as an outbreak here at Yazoo City. The BOP has made it all but impossible to file anything with the Courts in a timely manner. How I am able to send this to the Court is via the TRULINCS system? I have no legal access to anything since April 1, 2020.

## THE FIRST STEP ACT GOVERNS COMPASSIONATE RELEASE

Courts use the phrase "compassionate release" and "sentence modification" interchangeable. See United States V. Beck, No. 1:13-CR-186-6, 2019 WL2716505 at *4 (M.D.N.C. June 28, 2019).

Under 18 U.S.C. 3582 (C) (1) (A) (i), the Court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendants behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and MAY POSE A TERM OF PROBATION OR SUPERVISED RELEASE WITH OR WITHOUT CONDITIONS THAT DOES NOT EXCEED THE UNSERVED PORTION OF THE ORIGINAL TERM OF IMPRISONMENT), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that...extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under the U.S. Sentencing Guideline Manual Subsection 1B1.12 cmt. n. 1 (U.S. Sentencing Comm'n 2004), the sentencing commission's current policy still states that a court can order a compassionate release only "upon the motion of the Director of the Bureau of Prisons". It then outlines four situations in which compassionate release is appropriate. The first category covers prisoners with terminal conditions, the second addresses prisoners of advanced age, and the third applies when a prisoner becomes the sole available caregiver for a child, due to the death or incapacitation of the other parent. I do not seek relief under any of these subdivisions.

The final category (D) is a catch-all provision that permits relief when "as determined by the Director of the Bureau of Prisons there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). It is under this catch-all provision that I seek relief. The First Step Act now allows either the Director OR the individual defendant to file a motion for compassionate release.

At present, no Court of Appeal has addressed this issue. But a majority of District Courts to consider the question have embraced my position.

There is no policy statement applicable to motions of compassionate release filed by defendants under the First Step Act. And unlikely that there will be anytime soon due to the fact that there are only

currently two members of the Sentencing Commission and President Trump has not filled the other vacancies yet. By its terms, the old policy statement applies to motions for compassionate release filed by the BOP Director and makes no mention of motions filed by defendants. While the old policy statement provides helpful guidance, it does NOT constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under subsection 3582 (C) (1) (A) (i).

An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role. It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows Courts to grant such motions even when the BOP finds they are not appropriate. Thus Courts may, on motions by defendant's, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy. Beck, 2019 WL 2716505 at *5-6; See also United States V. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923 at *5 (S.D. Tex . June 17, 2019) (The correct interpretation of Subsection 3582 (C) (1) (A)-based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time, is that when a defendant brings a motion for a reduction in sentence under the amended provision, the Court can determine whether any extraordinary and compelling reasons other that those delineated in U.S.S.G. Subsection 1B1.13 cmt. n. 1. (A)-(C) warranting granting relief. Accord United States V. Cantu-Rivera, No. H-89204, 2019 WL2578272 at *2 n. 1 (S.D. Tex. June 24, 2019); United States V. Fox, No. 2:14-CR-03-DBH, 2019 3046086 at *2 (D. Me. July 11, 2019); United States V. Rivernider, No. 3:10-CR-222 (RNC), 2019 WL 3816671 at *2 (D. Conn Aug. 14, 2019); United States V. Bucci, No. 04-10194-WGY, 2019 WL 5075964 at *1 (D. Mass Sept. 16, 2019); United States V. Brown, No. 4:05-CR-00227-1, 2019 WL 4942051 at *4 (S.D. Iowa Oct. 8, 2019); United States V. Urkevich, No. 8:03CR37, 2019 WL6037391 at *3 (D. Neb. Nov 14, 2019); United States V. Dusenbery, No. 591-CR-291, 2019 6111418 at *3 n.3 (N.D. Ohio Nov.18, 2019); United States V. Valdez, No. 3:98-CR-0133-01-HRH, 2019 WL 7373023 at *2-3 (D. Alaska Dec. 31, 2019); United States V. Schmitt, No. CR12-4076-LTS, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020).

I would respectfully request this honorable court concur with these other courts I have listed above. Congress has explicitly removed the Director of the Bureau of Prisons control over compassionate release motions in the First Step Act. Under the First Step Act, it is for the Court, not the Director of the BOP, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence. See United States V. Maumau Case No. 2:08-CR-00758-TC. The Honorable Tina Campbell ruled in this case that the District Court and not the BOP could make the determination and grant relief.

For this very reason, I ask that this honorable Court find that I am entitled to relief.

**EXTRAORDINARY AND COMPELLING REASONS**

In order for a court to grant compassionate release, it must find that "extraordinary and compelling reasons warrant" such release. 18 U.S.C. Subsection 3582 (C) (1) (A) (i).

I am currently in the midst of a pandemic outbreak of the novel coronavirus COVID-19. Two inmates have just recently died next to me. Their names and location can be found at www.BOP.Gov. Currently there are more than 1,957 deaths of inmates due to this disease for which there is no cure or vaccine. 183 staff are currently infected. 78 inmates have died. Two staff members have died. The Medium is reporting 1 inmate infected, and 7 staff members. he USP is reporting 45 inmates infected, 1 inmate death and 13 staff members infected. The Low where I am housed reports 16 inmates and 6 staff infected, with 2 inmate deaths. These numbers seem highly illogical given the fact the numerous District Courts have determined that the BOP has lied, covered up and reported a false narrative repeatedly to the Courts. The numbers are believed by federal Judges, Congress and the United States Senate to be much higher. (See Exhibits).

I suffer from numerous pre-existing conditions and meet morbidity issues as described by the CDC. I am 59 years old (DOB 5/12/1961) and suffer from several chronic conditions, including: High blood pressure (putting me into a dangerously high risk factor for stroke) , Post cancer incontinence (Chronic), Kidney Stones (Chronic), Vertigo, Degenerative Disc Disease (Chronic), Recent Hernia, Cancer in Remission, Previous hospitalizations due to pneumonia, Hearing loss, Allergies, Nerve Damage to my right-hand and right foot, Hemaocrit in blood sporadically requiring phlebotomies.

There is NO proper PPE. NO hand sanitizer, no way one can socially distance due to the cramped and over crowded conditions of prison. I am forced to share a commode, urinals, sinks, faucets, showers, with hundreds of other inmates.

SDNY Chief Judge Colleen McMahon astutely stated in U.S. V. Resnick, No. 1:12-CR-00152-CM (SDNY April 2, 2020) "releasing a prisoner who is for all practical purposes deserving compassionate release during normal times is all but mandated in the age of COVID-19".

This is a terrible time to be incarcerated in the BOP, when for so many a federal prison term has become a death sentence. Any further delay or waiting on my part could literally have deadly consequences. As a result of this in U.S. V. Perez, No. 17-CR-513-3 (AT) (S.D.N.Y. April 1, 2020), this federal Judge waived the "30 day lapsing" requirement based on the determination that for the defendant, "remaining incarcerated for even a few weeks increases the risk that he will contract COVID-19 and so requiring exhaustion would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are extraordinary and compelling".

Since Coronavirus hit Yazoo City, it has had precisely that, deadly consequences.

Federal Judges nationwide have expressed how outrageous and outlandish the conduct of the Bureau of Prisons has been in dealing with this pandemic. See Exhibits. This Yazoo City Complex has been profoundly affected by the virus just as FCI Lompoc, FCI Terminal Island, FCI Elkton, FCI Ft. Worth, FCI Oakdale and FCI Danbury have been. Director Carvajal has acknowledged this repeatedly.

You did not sentence me to the death penalty your Honor. I am not sitting on the Bureau of Prison's Death Row located in Terra Haute, IN. I am not on the BOP's death block. I have expressed contrition, remorse and tremendous sorrow for my crime and the actions that led to it. I apologize to the Court profoundly. I ask that you please intervene and show me mercy. You can increase the amount of supervised release to cover the remaining portion of my sentence. I have taken numerous ameliorating programming as outlined in the First Step Act. All of this rehabilitation has been to done to ensure that I will never recidivate. I have a wife, we have been married for approximately the past 25 years and I have two children who both recently graduated college. I can quarantine at my wife's home in St. Peters, Missouri. I have had clear conduct, no disciplinary issues whatsoever. I have been employed in the institution's UNICOR since arriving at Yazoo City. I am a first time offender. I have taken every release preparation program offered here at the Low. I am mentoring men and participating in the Chapel services. I am not the individual that stood before you back on August 29th of 2018. I have been incarcerated since December of 2016. I am currently scheduled to be released in November of 2025. With a year of RRC, I will be released in November of 2024.

On April 3, 2020, U.S. Attorney General William Barr issued a Memorandum for the Director of the Bureau of Prisons. His subject was to increase the use of Home Confinement at institutions most affected by COVID-19. Yazoo City is covered by this directive, as factor #1 of his memo reads, "IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE, FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS. Yazoo City is officially in that category and has been deemed so by the Director himself for quite some time now. As you must surely be aware your Honor, a debacle ensued when the BOP issued guidance regarding this and then reversed itself, only to once again change the criteria. The Federal Public Defenders Office and Congress have been highly critical of this. See Exhibits. Letters from House Judiciary Chairman Jerrold Nadler (D-NY) issued to the BOP on March 30th, 2020 and an April 1, 2020 letter issued by the FEDERAL PUBLIC & COMMUNITY DEFENDERS legislative committee.

I am at grave risk of severe illness or death in this current environment. Please help me to avert a catastrophe your Honor. Federal Prisons have been long known to be associated with transmission probabilities of infectious diseases. The perfect storm is now playing out here at Yazoo City FCI.

The U.S. Attorney's Office has repeatedly opposed motions brought by defendant's during this crisis. Even opposing Judge James Gwin's Order regarding inmates housed at FCI Elkton, Ohio, all of the way to the United States Supreme Court.

Time and time again they have been rebuked by United States District Court Judges. See Exhibits.

No one has been tested here for the novel coronavirus. This is unconscionable given that we have had people die here for months and many hundreds infected. Their so-called "enhanced screening" consists of having your forehead temperature read. These modified operations do not sufficiently address pre-symptomatic spread of COVID-19 among staffers, contractors and inmates.

I urge you to look carefully at the cases I have attached. They will demonstrate that what I am telling you is the truth. In Case No. 4:20-CV-00794-JG filed 4.22.2020 in the Northern District of Ohio, Craig Wilson, et. al., V. Mark Williams, et. al, U.S. District Court Judge James S. Gwin detailed the BOP's failed efforts to protect inmates nationwide. As a PRO SE defendant, who is locked down and quasi-quarantined in a dorm style setting, I cannot access the law library. I have not been successful in getting the counselor or anyone else to provide me with a BP-8 or BP-9, thereby denying me access to the Courts, which is a violation of my civil rights.

Please review all of the evidence based recidivism reducing programming I have taken, which is verified by my Educational Transcript.

I am a low level offender. I did not receive any aggravating role adjustment in my instant offense.

I do not have any ties to large scale criminal organizations, gangs or cartels.

I have served a significant portion of my sentence and have been incarcerated since 12-2016.

I do not have any criminal history.

I have demonstrated exemplary conduct in prison. I have used my time wisely to improve myself. I have maintained close ties to my family and loved ones and have a concrete release plan and will be living with my wife in St. Peters, MO.

I pose absolutely no risk, threat or danger to anyone in the community.

My post-sentencing conduct has shown exemplary compliance with the institutional rules.

I have consistently received positive performance reviews for my institutional job assignment in UNICOR.

Since the day I came into prison, I have availed myself of every possible program in order to rehabilitate myself. I ask the Court to recognize the extraordinary degree of rehabilitation that I have accomplished and the extensive achievements that I have made.

The U.S.C. Subsection 3553 (A) factors warrant a reduction in sentence. Evidence of post sentence rehabilitation is likely the most critical core of considerations for the Court in a Motion for Sentence Reduction. In Pepper V. U.S., the Supreme Court emphasized the important nature of post-sentence rehabilitation, stating, "there would seem to be no better evidence than a defendant's post incarceration conduct". Pepper V. U.S. 131 S. Ct. 1229, 1241 (2011). In addition, evidence of post sentencing rehabilitation may be highly relevant to the "history and characteristics of the defendant". Subsection 3553 (a) (1). Such evidence may also be pertinent to the "need for the sentence imposed" to serve the general purposes of sentencing set forth in Subsection 3553 (a) (2)-in particular, to "afford adequate deterrence to criminal conduct", "protect the public from further crimes of the defendant", and to "provide the defendant with needed educational or vocational training...or other correctional treatment".

Roades submits that consideration of the relevant subsection 3553 (A) factors, including Roades post incarceration conduct, warrant a sentence reduction. Roades has maintained clear conduct and has been an exemplary inmate throughout the period of his incarceration. The attitudinal transition exhibited by Roades is remarkable. Throughout the tenure of his sentence, Roades has striven for self-betterment. Based upon these many factors, a reduction in his sentence is warranted.

I am an excellent candidate for a reduction in sentence, and am deserving of a reduced sentence in this case. There exists extraordinary and compelling reasons for releasing me at this time due to COVID-19 ravaging Yazoo City presently.

Thank you for your thoughtful consideration, Judge Fleissig. I will be someone whom you can tout that went on to live out a law abiding life and was a benefit to my community.

_/s/ Kerry Roades_

Kerry Glen Roades #46404-044

FCI Yazoo City- Unit C2

P.O. Box 5000

Yazoo City, MS 39194